UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARLENE GARNER,

    Plaintiff,

v.

SELECT PORTFOLIO
SERVICING, INC., WELLS
FARGO CORPORATE TRUST
SERVICES, and ORLANS
ASSOCIATES, P.C.,

    Defendants.

_____/

Case No. 15-10377

Hon. Mark A. Goldsmith
Magistrate Judge David R. Grand

### REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER [1]

On January 28, 2015, the plaintiff, Darlene Garner ("Garner"), proceeding *pro se*, filed a complaint against defendants Select Portfolio Servicing, Inc. ("Select"), Wells Fargo Corporate Trust Services ("Wells Fargo"), and Orlans Associates, P.C. ("Orlans") (collectively, "defendants"). [1].[1] Garner alleges that the defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and committed fraud in connection with their attempts to collect and foreclose on what she describes as a "unilateral mortgage contract." [*Id.* at 1].

At this point in this litigation, the only materials before the Court are Garner's complaint and the few exhibits attached thereto. She has not filed a proof of service indicating that she has served any of the defendants with process, and no defendant has entered an appearance. Nor has Garner filed a motion for temporary restraining order or any other motion seeking any form of

---

[1] All pretrial proceedings related to this action have been referred to the undersigned pursuant to 28 U.S.C. § 636(b). [5].

relief. However, Garner's complaint references a foreclosure sale on her property that is purportedly scheduled to take place on February 3, 2015 [1 at ¶ 9], and she asks in her complaint that the sale be "halted/set aside pending the outcome of this lawsuit." [*Id.* at 8]. In light of Garner's *pro se* status, the Court construes this aspect of her complaint as an *ex parte* motion for temporary restraining order ("TRO"). For the reasons stated below, the Court recommends that such motion be denied.

**Factual Background**

Although Garner appears to be asserting claims related to actions defendants have allegedly taken with respect to property she owns and a related mortgage, her factual and legal claims are, at best, quite murky. It appears that she owns property located at 4781 Catalina Dr. in Lake Orion, Michigan, and that at some unspecified point she gave a mortgage on that property to an unidentified lender in exchange for a loan. However, Garner does not attach a copy of the mortgage, loan documents, invoices, etc. Rather, she seems to allege that at some unspecified point, Wells Fargo was assigned the lender's rights under her loan. [1 at ¶1]. She also seems to allege that at some unspecified point, Select advised her that it had become the servicer of her loan. [*Id.*]. She claims that in November 2012, she sent Wells Fargo a "Qualified Written Request," but that Wells Fargo wrote her back indicating that it had no account for her. [*Id.* at ¶2].[2] Garner alleges that Select "fraudulently reported to [her] Experian Credit file that there has been an account opened with account number 277001526** since April of 2007 with Select [] in the amount of $318,172. I have never had an account with Select…" [1 at ¶ 3]. She

---

[2] Garner attached a copy of Wells Fargo's response, which indicated that Wells Fargo could not confirm her as an "active borrower" or that there was an "active mortgage" on her property. [1 at 13]. Wells Fargo also indicated that the loan number Garner had provided was not a valid Wells Fargo loan number. [*Id.*].

alleges that Select has sent her "numerous documents claiming to be the servicer of a mortgage loan of another account." [*Id.* at ¶ 4].

Garner alleges that she has "received a letter from Orlans [] threatening to institute Mortgage Foreclosure proceedings on behalf of Select []." [*Id.* at ¶5]. She claims that "Defendant's [sic] lack standing to Foreclose because they are not a real party in interest (or owner of the indebtedness) as it does not the promissory note, nor can it show a record chain of title proving such." [*Id.* at ¶6]. Garner claims that on January 2, 2015, she sent Orlans a "qualified written request," but that it has "continued the Foreclosure by advertisement even though there were no attempts to validate any claims on [her] property…" [*Id.* at ¶8]. Garner claims that on January 5, 2015, she received a notice on her door indicating that a sheriff foreclosure sale of her property is scheduled for February 3, 2015. [*Id.* at ¶9]. Finally, she claims that on January 9, 2015, Wells Fargo sent her a letter indicating that Wells Fargo Bank, N.A. "is the Trustee of the securitization that holds [her] loan … [despite the fact that she has] already received a letter from Wells Fargo that there is no such account," and that Select has sent her a payoff statement on a "fictitious account." [*Id.* at ¶¶12-13].

As noted above, one aspect of the relief Garner seeks in her complaint for the defendants' alleged violations is that the foreclosure sale scheduled for February 3, 2015, be "halted/set aside pending the outcome of this lawsuit." [*Id.* at 8]. The Court construes that request as an *ex parte* motion for TRO.

**Applicable Legal Standards**

"Temporary restraining orders and preliminary injunctions are extraordinary remedies designed to preserve the relative positions of the parties until further proceedings on the merits can be held." *Koetje v. Norton*, 2013 WL 8475802, at *2 (E.D. Mich. Oct.23, 2013). The

movant, however, bears a substantial burden of demonstrating entitlement to preliminary injunctive relief. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Such relief should be granted only if "the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). The same factors are considered in determining whether to grant a request for a temporary restraining order or a preliminary injunction. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir.2008). Those factors are: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest is served by issuance of the injunction. *Id.* (citing *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). Ultimately, whether to grant such relief is a matter within the discretion of the district court. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007).

Federal Rule of Civil Procedure 65(b)(1) addresses *ex parte* TRO requests, and provides:

> (b) Temporary Restraining Order.
>
>> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>>
>>> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>>>
>>> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Furthermore, an *ex parte* TRO is only appropriate where the applicant "would face irreparable harm so immediate that it would be improper to wait until after a preliminary

injunction hearing to enjoin the non-movant's conduct." *Erard v. Johnson*, 905 F.Supp.2d 782, 791 (E.D. Mich. 2012).  As the United States Supreme Court has explained, the extremely limited availability of *ex parte* TROs "reflect[s] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 439 (1974).

Examining the materials Garner has submitted against these standards, it is clear that she has failed to show she is entitled to a TRO halting the sheriff sale which she claims is scheduled for tomorrow, February 3, 2015.

**<u>Analysis</u>**

First and foremost, Garner has failed to comply with Rule 65(b)(1)'s requirements.  She has given no indication that she has provided the defendants with notice that she is seeking to enjoin the sheriff's sale of her property which she claims is scheduled to take place tomorrow.  Nor has she explained why she should not be required to provide such notice, or why it should not be required.  As discussed in more detail below, Garner has also failed to provide the Court with any "specific facts" that support her position; her complaint is comprised of vague, ambiguous and conclusory allegations which only raise questions, while providing no answers.  Thus, Garner's *ex parte* motion for TRO should be denied for failing to comply with Fed. R. Civ. P. 65(b)(1)(A) and (B).  *Wiggins v. Nationstar Mortg. LLC*, 2014 WL 3400911, at *1 (E.D. Mich. Jul. 10, 2014).

Garner's motion also fails substantively.  She has not presented the Court with sufficient facts to enable it to conclude that she has a strong likelihood of success on the merits of her claims.  She has not provided the Court with a copy of any mortgage or loan documents,

invoices, or salient correspondence.³ Nor has she provided the Court with a copy of the notice which purportedly sets the foreclosure sale for February 3, 2015, nor any other documents related to foreclosure proceedings or prior attempts by any lender to collect on the debt in question. *Wiggins*, 2014 WL 3400911, at *1. While Garner claims that Wells Fargo and Select have no connection to her mortgage, she does not identify the entity or entities to whom she claims she is indebted or whom she believes are holders of her mortgage. She does not allege that multiple creditors have claimed the same interest in a debt such that she has been subjected to double liability. Garner's fraud claim lacks the level of specificity required under Federal Rule of Civil Procedure 9(b), as she merely makes vague and conclusory assertions of fraud. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Nor has Garner shown that she will suffer irreparable harm without a TRO. Under Michigan law, a six-month redemption period exists pursuant to which a homeowner whose mortgage is foreclosed upon may regain title to his property. *See* MCL § 600.3140. Accordingly, even if the sheriff's sale that Garner claims is scheduled for February 3, 2015, takes place, she would still retain a statutory right to redeem her property, and could pursue her instant claims during that six-month window of time. *See Jackson v. U.S. Bank Loan Servicing*, 2009 WL 2447485, at *3 (E.D. Mich. Aug. 6, 2009) (finding no irreparable harm where homeowner seeking to enjoin foreclosure sale maintained right to redeem).

---

³ While Garner did provide the Court with a copy of a Wells Fargo letter dated November 19, 2012, in which it advised her that it was "unable to confirm Darlene Garner as an active borrower," "unable to verify an active mortgage on the property address supplied," and that the "loan number provided [] is not a valid WFHM loan number," standing alone, that letter does nothing to establish Garner's instant claims.

Garner also has failed to show that any of the other considerations for issuing a TRO cut in her favor.

For all of these reasons, the Court recommends that Garner's *ex parte* motion for TRO be denied.

**Conclusion**

For the reasons stated above, the Court **RECOMMENDS** that Garner's *ex parte* motion for TRO **[1]** be **DENIED**.

Dated: February 2, 2015  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 2, 2015.

s/Eddrey O. Butts

EDDREY O. BUTTS

Case Manager