UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DARLENE GARNER,

        Plaintiff,                              Case No. 15-cv-10377
                                                    HON. MARK A. GOLDSMITH
vs.

SELECT PORTFOLO
SERVICING, INC., et al.,

        Defendants.
_____/

**OPINION AND ORDER (1) OVERRULING PLAINTIFF'S OBJECTION TO THE R&R (Dkt. 34); (2) ACCEPTING THE MAGISTRATE JUDGE'S RECOMMENDATION DATED JULY 28, 2015 (Dkt. 32); (3) GRANTING DEFENDANTS WFNA'S AND SPS'S MOTION TO DISMISS (Dkt. 15); AND (4) GRANTING IN PART AND DENYING IN PART DEFENDANT ORLANS' MOTION TO DISMISS (Dkt. 18)**

**I.  INTRODUCTION**

Plaintiff Darlene Garner, proceeding pro se, brings claims alleging fraud and violations of the Fair Debt Collection Practice Act ("FDCPA") against Defendants Select Portfolio Servicing, Inc. ("SPS"), Wells Fargo Corporate Trust Services ("WFNA"), and Orlans Associates, P.C. ("Orlans"). Plaintiff's claims arise out of a mortgage loan granted in April 2007, which allowed Plaintiff to purchase her home (the "Property"), as well as the subsequent assignment and servicing of the loan, and the initiation of foreclosure proceedings in 2014.

WFNA claims to be the holder of Plaintiff's mortgage, SPS/WFNA Br. at 2 (Dkt. 15), citing a duly recorded assignment of mortgage, see Assignment (Dkt. 15-3). SPS claims to be the servicer of that mortgage. SPS/WFNA Br. at 2. Orlans is a law firm that represented SPS in connection with various foreclosure proceedings, including the one at issue here. Compl. at 3

(Dkt. 1). After Plaintiff defaulted on her mortgage obligation, SPS notified Plaintiff of its intent to foreclose on the Property if Plaintiff did not cure the default. See Notice of Default (Dkt. 15-8). Plaintiff did not cure the default; instead, she filed the instant suit for injunctive and monetary relief.

The matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge David R. Grand (Dkt. 32). In the R&R, the Magistrate Judge recommended granting the motion to dismiss filed by SPS and WFNA (Dkt. 15), as well as granting in part and denying in part Orlans' motion to dismiss (Dkt. 18). Plaintiff filed her objections to the R&R (Dkt. 35), to which Defendants filed responses (Dkts. 36, 38).

The Court reviews de novo any portion of the R&R to which a specific objection has been made. Fed. R. Civ. P. 72(b). For the reasons that follow, the Court overrules Plaintiff's objections, accepts the recommendation contained in the R&R, grants the motion to dismiss filed by SPS and WFNA, dismisses the claims against those defendants with prejudice, and grants in part and denies in part Orlans' motion to dismiss.

## II. ANALYSIS

**1. Plaintiff's Fraud Claims**

In both her original complaint and in her objection to the R&R, Plaintiff insists that neither SPS nor WFNA has an interest in the Property and that, as a result, their attempt to foreclose on the Property amounts to a fraudulent misrepresentation that they possess ownership interests. Compl. at 3; Pl. Obj. at 2-3. The premise for this claim is Plaintiff's assertion that SPS and WFNA "lack standing to foreclose because they are not . . . part[ies] in interest (or owner[s] of the indebtedness)." Compl. at 3. Plaintiff also asserts that SPS does not service her loan. Id. at 2. Concerning the remaining defendant, Orlans, Plaintiff appears to allege that it aided and

2

abetted the fraud that was allegedly perpetrated by WFNA and SPS.  Compl. at 3; Pl. Obj. at 3-4, 7-8.

With respect to WFNA, Plaintiff argues in her briefing on the motions (although she does not so allege in her complaint) that the assignment of the mortgage to WFNA was invalid, because WFNA accepted the assignment of mortgage in its capacity as a trustee of a trust after the date on which the trust was supposedly terminated.  Pl. Resp. at 5-6 (Dkt. 24).  According to Plaintiff, WFNA was, therefore, not the owner of the indebtedness when it commenced foreclosure, making its attempt to foreclose a fraudulent act.  Id.  Notably, although Plaintiff did allege in her complaint that WFNA did not own the indebtedness, see Compl. at 7, she did not make any arguments based upon WFNA's status as a trustee at that time.  With respect to SPS, Plaintiff asserts that SPS is not the loan's servicer, because Plaintiff does not have an "account" with SPS.  Pl. Obj. at 2-3.

The R&R recommended dismissing all of Plaintiff's fraud claims against both WFNA and SPS, based on collateral estoppel.  The Magistrate Judge reasoned that Plaintiff is precluded from alleging that SPS and WFNA lack an interest in the Property, based on a ruling on SPS's motion for relief from the automatic stay filed in Plaintiff's bankruptcy (Dkt. 28-4), which held that SPS was the servicer of the loan and that SPS serviced the loan on behalf of WFNA.  R&R at 3 (citing 9/26/2013 Bankr. Order (Dkt. 28-6)).  The Magistrate Judge recommended giving the bankruptcy court's order preclusive effect, stating that "the [Defendants'] right to pursue foreclosure was the central issue before the bankruptcy court."  Id. at 10.  The Magistrate Judge further stated that Plaintiff had a full and fair opportunity to litigate the issue, pointing out that Plaintiff did in fact object to WFNA's standing to foreclose, but she did not prevail.  Id.  Accordingly, the Magistrate Judge recommended that, due to the stay relief order, the question

whether WFNA and SPS have an interest in the Property is settled, and that Plaintiff may not re-litigate the issue here.

Objecting to the R&R, Plaintiff asserts that the relief from the automatic stay granted during her bankruptcy proceedings "has nothing to do with" the issues raised in her complaint. Pl. Obj. at 2. For purposes of collateral estoppel, Plaintiff is correct. As explained below, a stay relief motion only initiates a summary proceeding, and the bankruptcy court's subsequent order merely establishes whether a creditor has a colorable claim against the debtor.

Generally speaking, collateral estoppel bars a party from re-litigating an issue that was already determined in court. For collateral estoppel to apply, three elements must be satisfied: (i) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (ii) the same parties must have had a full and fair opportunity to litigate the issue; and (iii) in some cases, there must be mutuality of estoppel. Monat v. State Farm Ins. Co., 677 N.W.2d 843, 845-846 (Mich. 2004).

The Court is not persuaded that the bankruptcy court's order satisfies the first element, i.e., the requirement of a final judgment on the merits. Most courts that have considered the issue appear to hold that a stay relief order has very limited preclusive effect. In re Mullarkey, 536 F.3d 215, 226 (3rd Cir. 2008); Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 32-33 (1st Cir. 1994) (collecting cases); In re Tally Well Serv., Inc., 45 B.R. 149, 151-152 (Bankr. E.D. Mich. 1984). A stay relief order merely establishes — after a summary proceeding — whether a creditor has a colorable claim against the debtor, i.e., whether a creditor has shown a reasonable likelihood that it has a meritorious claim. Grella, 42 F.3d at 33-34. A stay relief order does not determine the actual validity, priority, or extent of a lien. Id. at 33; In re Vitreous Steel Prods. Co., 911 F.2d 1223, 1232 (7th Cir. 1990). Indeed, after the stay is lifted, a debtor may contest

the creditor's interest — even if the debtor's objection was not preserved during the stay relief proceedings. See Grella, 42 F.3d at 33. Because the stay relief order in Plaintiff's bankruptcy does not constitute a final adjudication on the merits of SPS's standing to foreclose, collateral estoppel is no bar to Plaintiff's claims.

Nevertheless, the Court dismisses Plaintiff's fraud claims, because they fail to state a claim upon which relief can be granted — the alternative ground for dismissal urged by the Magistrate Judge. See R&R at 9 n.5, 11.

Plaintiff contends that the assignment of the mortgage was invalid. Specifically, she claims that the assignment of the mortgage to WFNA, in its capacity as trustee for a trust, was invalid, because the trust had been terminated prior to the assignment. Pl. Resp. at 5. Whether the termination of a trust would actually invalidate the assignment of mortgage to its trustee is immaterial, however, because Plaintiff's factual premise — that the trust was terminated prior to assignment — is not supported by the submission on which she wholly relies.[1] Specifically, Plaintiff offers a "Certification and Notice of Termination of Registration under Section 12(g) of the Securities Exchange Act of 1934 or Suspension of Duty to File Reports under Sections 13 and 15(d) of the Securities Exchange Act of 1934." Pl. Offer of Proof at 7 (cm/ecf page) (Dkt. 26). Plaintiff labels it a "termination registration." Pl. Resp. at 5. This Certification, however, only demonstrates the termination of the trust's registration with the SEC, rather than, as Plaintiff

---

[1] Regarding Plaintiff's point that termination of a trust invalidates assignment of a mortgage to the trustee, Plaintiff relies on a New York state trial court decision, Wells Fargo Bank, N.A. v. Erobobo, 972 N.Y.S. 2d 147, 2013 WL 1831799 (N.Y. Sup. Ct. 2013 Apr. 29, 2013) (table), and objects to the R&R's rejection of that case. Pl. Obj. at 6. Applying New York law, Erobobo held, in part, that a note acquired by a trustee after the trust's closing date was void. However, Erobobo was recently reversed on appeal. 127 A.D. 3d 1176 (N.Y. App. Div. 2015). Furthermore, because this issue concerns the transfer of a security interest in real property situated in Michigan, Michigan law applies. In re Miller, 442 B.R. 621, 629-630 (Bankr. W.D. Mich. 2011). For these reasons, and because Plaintiff's complaint fails to sufficiently allege the prerequisite fact that the trust had been terminated, the Court declines to apply Erobobo.

suggests, the termination of the trust itself. And a termination of a trust's registration does not terminate the trust itself. Tucker v. Charles Schwab Bank, No. 12-CV-3399, 2013 WL 1337329, at *2 (N.D. Ill. Mar. 29, 2013) ("[D]e-registering the trust [with the SEC] does not terminate the trust's existence."). Apart from her citation to the termination of registration, Plaintiff alleges no other facts supporting this claim. Because Plaintiff misinterprets the documentary basis for her claim that the trust was terminated at the time of the assignment, she asserts no facts that make her case plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (a complaint must be supported by factual allegations, not legal conclusions). Accordingly, the Court concludes that Plaintiff fails to state a claim upon which relief can be granted with respect to the assignment to WFNA. Plaintiff's fraud claims against WFNA are, therefore, dismissed with prejudice.

Turning to Plaintiff's claim that SPS committed fraud, the Court again rejects collateral estoppel — as proposed in the R&R — as the basis for dismissing the claim. Nonetheless, the Court dismisses Plaintiff's claim on other grounds.

One of Plaintiff's two claims against SPS is her argument that SPS lacks an ownership interest in the indebtedness. Compl. at 7; Pl. Obj. at 2. Under Michigan law, however, a servicer may foreclose without an ownership interest. Mich. Comp. Laws § 600.3204(1)(d) states that the party foreclosing on a mortgage must be "either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." (emphasis added). Thus, even accepting as true Plaintiff's allegation that SPS owned no interest in the indebtedness, SPS, as servicer of the mortgage, was entitled to foreclose on the property, and Plaintiff's claim on that basis fails as a matter of law.[2]

---

[2] The Court declines to consider Plaintiff's "Supplemental Brief," which was untimely filed almost two months after the R&R issued (Dkt. 39). See Fed. R. Civ. P. 72(b)(2). Furthermore, Plaintiff makes no attempt to explain the significance of this filing with respect to her claims.

In the alternative, Plaintiff alleges that SPS simply has never been the servicer of the loan. Compl. at 2; Pl. Obj. at 2. However, Plaintiff's premise is not plausible. Other than pointing out that she lacked an "account" with SPS, Compl. at 2, Plaintiff does not allege why SPS was not the servicer of her loan at the time of her default. In fact, the lack of an account between the borrower and servicer is irrelevant. An entity's status as a "servicer" is based on its activities vis-à-vis the indebtedness; it is not based on whether an "account" or some other formalized relationship exists between the servicer and the debtor. See Mich. Comp. Laws § 445.1651a(s). Accordingly, even accepting as true Plaintiff's allegation regarding an "account," Plaintiff's fraud claim is a conclusory allegation that SPS is not the loan's servicer, without any factual assertion in support; as such, it cannot be deemed a plausible claim. Steinberg v. Fed. Home Loan Mortg. Corp., 901 F. Supp. 2d 945, 950 (E.D. Mich. 2012).

Finally, to the extent that Plaintiff alleges fraud by Defendant Orlans for its part in the activities of WFNA and SPS, these claims also fail. Although Plaintiff's discussion of "aiding and abetting" is not applied to any defendant in particular, the Court assumes, from the context of Plaintiff's filings, that Plaintiff proceeds against Orlans on an "aiding and abetting" theory. See Pl. Resp. at 6-7. With respect to fraud, it appears that Plaintiff's sole basis for a claim against Orlans is that Orlans represented one or both of the other Defendants and recorded the assignment of mortgage at their direction, thereby facilitating the other Defendants' allegedly unlawful acts. Compl. at 3, 6. Because the Court dismisses Plaintiff's fraud claims against SPS and WFNA, it follows that Plaintiff has not stated a claim against Orlans for aiding and abetting that same fraud. See Bank of Am., N.A. v. Corporex Cos., LLC, ___ F.3d ___, 2015 WL 1719023, at *11 (E.D. Ky. Apr. 15, 2015) ("The [plaintiff] does not argue how its aiding and

---

Mays v. Tenn. Valley Auth., 274 F.R.D. 614, 619 (E.D. Tenn. 2011) (general objections to R&R do not warrant de novo review by the district court).

7

abetting claims for fraudulent omission can survive even if the underlying tort claims fail."). The derivative fraud claims against Orlans are, therefore, dismissed with prejudice.

### 2. Plaintiff's FDCPA Claims

The FDCPA, 15 U.S.C. § 1692 et seq., was intended, in relevant part, to "eliminate abusive debt collecting practices by debt collectors." Id. § 1962(e). The FDCPA contains a number of restrictions on how a debt collector may communicate with a debtor. See id. §§ 1692d – 1692g. None of these restrictions applies, however, if the actor is not a "debt collector" as defined by the Act. See id. § 1692k (imposing civil penalties on debt collectors only). Plaintiff acknowledges this threshold issue. Pl. Obj. at 7 ("[F]or the Defendants . . . to be liable under the FDCPA, they must fall within the FDCPA's definition of a 'debt collector.'").

With respect to SPS and WFNA, Plaintiff's only FDCPA-related objection to the R&R is directed toward the Magistrate Judge's conclusion that those Defendants are not "debt collectors" under the Act. Upon de novo review, the Court accepts the Magistrate Judge's recommendation. Although the term "debt collector" is broadly defined to include one who "regularly attempts or attempts to collect" a debt, the term expressly does not include "any person collecting or attempting to collect any debt owed or due . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). Also excluded is "a creditor . . . if the creditor, in its own name, is trying to collect a debt that is owed to the creditor." Id. § 1692a(6)(A). Interpreting these provisions, courts in this jurisdiction hold that "creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." Mohlman v. Long Beach Mortg., No. 12-10120, 2013 WL 490112, at *4 (E.D. Mich. Feb. 8, 2013). The statute, therefore, excludes both WFNA and SPS from its definition of "debt collector."

Accordingly, Plaintiff's FDCPA claims as against SPS and WFNA are dismissed with prejudice.

Concerning Orlans, Plaintiff objects to the Magistrate Judge's conclusion that Plaintiff failed to state a claim under 15 U.S.C. §§ 1692d, 1692e, or 1692f. R&R at 15-16. Pl. Obj. at 7-8. The Magistrate Judge reasoned that the alleged violations of the statute — which prohibits harassment, false or misleading representations, and unfair practices by debt collectors — were premised on the legally insupportable premise that Orlans' client, SPS, had no standing to foreclose. R&R at 16. Plaintiff offers no cogent response to this point. See Pl. Obj. at 7. As the Court agrees with the Magistrate Judge, these claims are dismissed with prejudice.

Finally, neither Plaintiff nor Defendants objected to the Magistrate Judge's recommendation to deny in part Defendant Orlans' motion to dismiss. Specifically, the R&R recommended that the Court not dismiss Plaintiff's claim against Orlans under 15 U.S.C. § 1692g. R&R at 16-19. The failure to file a timely objection to an R&R constitutes a waiver of the right to further judicial review. See Thomas v. Arn, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."); Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370, 1373-1374 (6th Cir. 1987) (failure to file objection to R&R "waived subsequent review of the matter"); Cephas v. Nash, 328 F.3d 98, 108 (2d Cir. 2003) ("As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."); Lardie v. Birkett, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002) ("As to the parts of the report and recommendation to which no party has objected, the Court need not conduct a review by any standard."). However, there is some authority that a district court is required to review the R&R for clear error. See Fed. R. Civ. P. 72 Advisory Committee Note Subdivision (b) ("When no

timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). Therefore, the Court has reviewed that portion of the R&R for clear error. On the face of the record, the Court finds no clear error and accepts the recommendation to deny Orlans' motion to dismiss as it pertains to § 1692g.

### III. CONCLUSION

For the reasons set forth above, the Court overrules Plaintiff's objections (Dkt. 35), accepts the recommendation contained in the R&R (Dkt. 32), grants the motion to dismiss filed by Defendants WFNA and SPS (Dkt. 15), and grants in part and denies in part the motion to dismiss filed by Defendant Orlans (Dkt. 18).

SO ORDERED.

Dated: September 25, 2015            s/Mark A. Goldsmith
       Detroit, Michigan             MARK A. GOLDSMITH
                                     United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 25, 2015.

                                     s/Carrie Haddon
                                     Case Manager