UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

DARLENE GARNER,

                      Plaintiff,                Civil Action No. 15-10377
                                                   Honorable Mark A. Goldsmith
      v.                                    Magistrate Judge David R. Grand

SELECT PORTFOLIO SERVICING, INC.,
WELLS FARGO CORPORATE TRUST
SERVICES, and ORLANS ASSOCIATES, P.C.,

                      Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [55] AND TO
DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [57]**

Before the Court are cross-motions for summary judgment filed by Plaintiff Darlene Garner ("Garner") and the sole remaining defendant in this case, Orlans Associates, P.C. ("Orlans"). (Docs. #55, 57). An Order of Reference was entered on January 29, 2015, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #5). The Court heard oral argument on these motions on August 2, 2016.

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Orlans' Motion for Summary Judgment [**55**] be **GRANTED** and Garner's Motion for Summary Judgment [**57**] be **DENIED**.

**II.    REPORT**

    **A.    Procedural History**

The underlying action initially involved Garner's claims that Defendants committed fraud in connection with the servicing and foreclosure of her residential mortgage, and that they had

violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.* (Doc. #1). Previously, however, this Court issued a Report and Recommendation ("R&R") to dismiss all of Garner's claims except her FDCPA claim against Orlans. (Doc. #32). The Honorable Mark A. Goldsmith adopted that R&R on September 25, 2015. (Doc. #40).

### B. Factual Background

#### 1. *The Mortgage at Issue*

On April 5, 2007, Garner granted a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for lender Pulte Mortgage, LLC, in the amount of $318,172 (the "Mortgage"), to purchase a residence located at 4781 Catalina Drive, Lake Orion, Michigan 48359 (the "Property"). (Doc. #55-2). The Mortgage was recorded in Oakland County, Michigan, on April 12, 2007. (*Id.*).

In an Assignment of Mortgage dated April 15, 2010, and filed on April 22, 2010, MERS assigned its interest in the Mortgage to Wells Fargo Bank, National Association ("WFNA"), "as trustee for certificateholders of Bear Stearns Asset Backed Securities I LLC, Asset Backed Certificates, Series 2007-AC5, P.O. Box 292190, Lewisville, CA 75029, its successors and assigns" (the "Assignment"). (Doc. #55-3).

#### 2. *Garner Files for Bankruptcy*

Just prior to the Assignment, on March 30, 2010, Garner filed a voluntary petition for Chapter 13 bankruptcy. (Doc. #55-4). As part of that petition, Garner filed a Schedule D form, in which she listed EMC Mortgage Corporation ("EMC") as a secured creditor who held the first and second mortgages on the Property.[1] (Doc. #55-5). The Property was valued at $300,000, while the debt owed on the first mortgage was listed at $310,000, and the debt owed on the

---

[1] EMC appears to have been the servicing agent for Garner's loan at the time.

2

second mortgage was listed as $38,000. (*Id.*).

In her bankruptcy case, Garner proposed a Chapter 13 plan that would have her directly pay the first mortgage, which was current. (Doc. #55-6). She also proposed to strip the second mortgage on her residence "for [the] reason that senior lien has balance of $317,000; property value is less than $300,000, and second lien held by EMC … having balance of $38,000 has no equity to attach to …." (*Id.* at 8). Garner's Chapter 13 plan was confirmed by court order on July 30, 2010, and she was permitted to strip the second mortgage on the basis of the validity of the first mortgage and lack of equity to support the second mortgage. (Doc. #55-7).

In the meantime, on May 8, 2010, EMC, as servicer for WFNA, filed a Proof of Claim in Garner's bankruptcy case in the amount of $318,449.90, to which EMC attached a copy of the Mortgage and Assignment of Mortgage described above.[2] (Doc. #55-8). Garner did not object to this Proof of Claim. (Doc. #55-4).

During her bankruptcy case, Garner fell behind on directly paying the first mortgage. On August 22, 2013, Select Portfolio Servicing ("SPS"), by and through Orlans, filed a Motion for Relief from the Automatic Stay. (Doc. #55-9). In that motion, SPS was identified as the servicer of Garner's loan on behalf of WFNA. (*Id.*). SPS alleged in its motion that Garner "failed to maintain the direct payments to Movant and is now due for April 1, 2011 to the present in the approximate amount of $56,944.56." (*Id.* at ¶7). Garner, through her counsel, filed a response to the motion, challenging only WFNA's standing to seek relief from the automatic stay. (Doc. #55-10). Garner did not challenge the account delinquency or SPS' assertion that it was the servicer of her loan. (*Id.*). On September 26, 2013, the bankruptcy court entered an Order

---

[2] Orlans argues, then, that at least as early as May 8, 2010, Garner was provided documents showing the chain of title, including the name of the original lender and the assignment of the mortgage to WFNA. (Doc. #55 at 9).

3

Granting Relief from Stay and indicating that SPS and WFNA were "free to pursue [their] state court remedies with respect to [their] interest in the subject property." (Doc. #55-11).

On September 10, 2015, as Garner neared the end of her Chapter 13 case, the Chapter 13 Trustee issued a Notice of Final Cure Payment and Trustee's Notice of Completion of Plan Payments. (Doc. #55-4 at 20). On September 23, 2015, SPS, as servicer for WFNA, filed a response, disagreeing that the mortgage account was current. (Doc. #55-12). Specifically, SPS stated that the account was due for April 1, 2011, through September 1, 2015, and the total amount to cure the delinquency was $119,284.46. (*Id.* at 2). On September 28, 2015, Garner stipulated that upon discharge the mortgage loan would not be deemed to be current. (Doc. #55-13). On November 18, 2015, Garner received a discharge of her debts, and on November 23, 2015, her bankruptcy case was closed. (Doc. #55-4 at 21).

        3.       *Foreclosure Proceedings are Instituted*

On November 7, 2013, after SPS had been granted relief from the automatic stay, SPS sent Garner a Notice of Default that provided the status of her loan account, identified SPS as the servicer, and identified WFNA as the noteholder. (Doc. #55-14). On December 24, 2014, Orlans received a referral from SPS, as servicer for WFNA, to commence foreclosure proceedings on the mortgage at issue in this case. (Doc. #55-15 at ¶6). On December 26, 2014, Orlans mailed a letter to Garner, which stated, in relevant part:

> This office represents Select Portfolio Servicing, Inc., which is the creditor to whom your mortgage debt is owed or the servicing agent for the creditor to whom the debt is owed. The creditor has referred this matter to this office with instructions to start proceedings to foreclose the mortgage located at: 4781 Catalina Drive, Unit 123, Lake Orion, Michigan, 48359.
>
> As of the day of this letter through December 24, 2014, the **TOTAL PAYOFF** is **$412,255.70**.

            *    *    *

4

> The debt described above will be assumed to be valid by this office, the creditor's law firm, unless you, the debtor/consumer, within thirty (30) days after the receipt of this notice, dispute the validity of the debt or some portion thereof. If you notify this office in writing, within thirty (30) days of the receipt of this notice, that the debt, or any portion thereof, is disputed, we will obtain a verification of the debt and a copy of the verification will be mailed to you. If the debt is based on a judgment, a copy of the judgment will be provided for you, upon request.
>
> If the creditor named in paragraph one of this letter is not the original creditor, and if you make a written request to this office within thirty (30) days from the receipt of this notice, the name and address of the original creditor will be mailed to you.

(Doc. #55-16 at 2-3).

Orlans retained a third party vendor, the Detroit Legal News, to publish the notice of the foreclosure sale of the Property beginning on December 31, 2014, and continuing for the statutory notice period of four weeks (or until January 21, 2015), as required by M.C.L. §600.3208. (Doc. #55-15 at ¶6 [sic-8]). Notably, the evidence establishes that the publication began <u>before</u> Orlans received Garner's debt dispute (discussed below). (*Id.*). In addition, at Orlans' request, the Detroit Legal News had the notice of foreclosure posted at the Property on January 5, 2015, as required by M.C.L. §600.3208. (*Id.* at ¶7 [sic-9]). Again, the posting occurred <u>prior to</u> Orlans receiving Garner's debt dispute. (*Id.*).

On January 6, 2015, Orlans received a letter from Garner, dated December 29, 2014, and titled "R.E.S.P.A. QUALIFIED WRITTEN REQUEST AND DEBT VALIDATION REQUEST." (*Id.* at ¶8 [sic-10]; Doc. #55-17). Garner specifically asked Orlans to "treat this letter as a 'qualified written request' under the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e)." (Doc. #55-17 at 2). Garner also wrote, in pertinent part:

> Specifically, we are disputing
>
> a) The identity of a true secured lender/creditor/servicer, <u>and</u>

5

> b) The existence of debt, <u>and</u>
>
> c) Your authority and capacity to collect on behalf of the alleged lender/creditor/servicer/note holder. **Because of extensive criminal activity and fraud in this arena, I require proof of the chain of secured ownership from the original alleged lender/creditor/note holder to the alleged current lender/creditor/note holder.**
>
> Further, I require proof that you are the entity that has been contracted to work on behalf of the alleged lender/creditor/servicer/note holder and state specifically what capacity and authority does your client claim to have over the alleged account as it is critical to the Advertisements by foreclosure laws of Michigan.
>
> \* \* \*
>
> ***<u>IF FORECLOSURE OR FORECLOSURE BY ADVERTISEMENT PROCEEDS WITHOUT VALIDATING THIS ALEDGE [SIC] DEBT, THE RESPONSIBLE AND INITIATING PARTIES WILL BE LIABLE FOR A MINIMUM OF $1,000,000 [One Million U.S. Dollars]</u>***….

(*Id.* at 2, 5 (emphasis in original)). In addition, Garner asked Orlans to provide certain information regarding her Mortgage such as the "name, address and telephone number of the actual entity that funded the transaction" and the "name, address and telephone number of the **Custodian of my original Promissory Note**…" (*Id.* at 3 (emphasis in original)).

On January 6, 2015, Orlans sent a letter to Garner in response to her letter, stating as follows:

> Our office is in receipt of your correspondence dated December 29, 2014, which requests various information about your mortgage loan. This firm will respond to any request for validation or verification of your loan or indebtedness by a separate letter, and in accordance with 15 U.S.C. §1692g(b) of the Fair Debt Collection Practices Act. To the extent that you seek additional information through a Qualified Written Request, or QWR, our office is not the appropriate entity to contact for that information. The Real Estate Settlement Procedures Act, or RESPA, provides that Qualified Written Requests must be properly directed to your loan servicer to be effective. Orlans does not accept service of Qualified Written Requests on behalf of its clients, and therefore that information must be requested from your servicer.

(Doc. #55-18 at 2). Subsequently, on March 4, 2015, Orlans sent a letter to Garner, "in response

6

to [her] request for verification of the debt owing on [her] mortgage," that provided information to validate the debt, including the loan origination date, original loan amount, original lender, current mortgagee, and current servicer. (Doc. #55-19 at 2). With that letter, Orlans enclosed a copy of the note, Mortgage, Assignment of Mortgage, and payment history. (*Id.*).

In the meantime, on January 28, 2015, Garner commenced the instant action against Orlans, SPS, and WFNA. (Doc. #1). Each defendant filed a motion to dismiss; the Court subsequently granted SPS' and WFNA's motions, and partially granted Orlans' motion to dismiss. (Doc. #40). Thus, the only remaining claim is Garner's FDCPA claim against Orlans; in particular, her allegation that Orlans violated the provision of the FDCPA entitled "Validation of debts," 15 U.S.C. §1692g.

The sheriff's sale, which was originally scheduled to occur on February 3, 2015, did not occur, due to the pending debt dispute. (Doc. #55-15 at ¶12 [sic-14]). According to Orlans, its policy is to adjourn sheriff's sales when a written debt dispute is timely received until a response has been provided that validates the debt. (*Id.* at ¶13 [sic-15]). Thus, on January 6, 2015, Orlans put the sheriff's sale on hold because of the debt dispute submitted by Garner. (*Id.* at ¶14 [sic-16]). After the debt was validated via Orlans' March 4, 2015 letter, the hold was lifted, but the sheriff's sale continued to be adjourned. (*Id.* at ¶15 [sic-17]). The foreclosure proceedings were eventually cancelled, and a sale never occurred. (*Id.* at ¶16 [sic-18]).

### C.  Legal Standard

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005). Federal Rule of Civil Procedure 56 provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris,*

*Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

A moving party with the burden of proof (typically the plaintiff) faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). As set forth above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citations omitted). Accordingly, summary judgment in favor of the plaintiff "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Harris v. Kowalski*, 2006 WL 1313863, at *3 (W.D. Mich. May 12, 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

**D. Analysis**

    *1. Orlans is Entitled to Summary Judgment*

        *a. Orlans Provided Proper Notice under the FDCPA*

Garner first alleges that Orlans violated the FDCPA when it "initiated Foreclosure by advertisement before giving [her] a notice of [her] rights to request validation under FDCPA. (Doc. #1 at ¶7). 15 U.S.C. §1692g(a) ("Validation of debts") imposes certain requirements on "debt collectors" such as Orlans, including the following:

> (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;

9

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

The issue, then, is whether Orlans provided Garner with a notice that complies with the requirements of 15 U.S.C. §1692g(a).

As set forth above, the evidence establishes that Orlans sent Garner a letter, dated December 26, 2014, which provided written notice of the underlying debt. (Doc. #55-16). That notice provided all of the information required under 15 U.S.C. §1692g(a), including: the amount of the debt; the name of the creditor; a statement that Garner had thirty days after receipt of the notice to dispute the debt; a statement advising Garner that if she timely disputed the debt, verification of the debt would be provided to her; and a statement that if Garner timely requested the name of the original creditor, it too would be provided. (*Id.*). Thus, the undisputed record evidence belies Garner's contention that Orlans failed to provide her with sufficient notice of her rights under the FDCPA.

In response to the evidence proffered by Orlans, Garner argues that the notice was legally insufficient because it "was OVERSHADOWED by a contradicting statement which serves no purpose but to delay and confuse the reader." (Doc. #64 at 6). Specifically, Garner points to language contained in Orlans' letter, which states:

> **IF YOU ARE CURRENTLY IN BANKRUPTCY OR HAVE RECEIVED A DISCHARGE IN BANKRUPTCY AS TO THIS OBLIGATION, THIS COMMUNICATION IS INTENDED FOR**

10

> **INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT IN VIOLATION OF THE AUTOMATIC STAY OR THE DISCHARGE INJUNCTION. IN SUCH CASE, PLEASE DISREGARD ANY PORTION OF THIS COMMUNICATION WHICH IS INCONSISTENT WITH THE FOREGOING.**
>
> **OTHERWISE, THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

(*Id.* at 6-7 (quoting Doc. #55-16 at 2) (emphasis in original)). Aside from quoting this language, however, Garner fails to explain how it contradicts the remainder of the notice, and she cites no case law even suggesting that this language somehow "overshadows" or nullifies other language in the notice. Moreover, as Orlans correctly points out, this language is known as a "Mini-Miranda Warning," and is required under various provisions of the Bankruptcy Code (e.g., 11 U.S.C. §1692e(11), 11 U.S.C. §362, and 11 U.S.C. §524). (Doc. #66 at 3). As such, Garner's argument that this language "overshadowed" the remainder of the notice, rendering it legally insufficient, is without merit.

Garner also argues that Orlans violated the FDCPA by failing to wait thirty days after sending out the notice to begin the foreclosure process. (Doc. #64 at 7). However, nothing in the FDCPA requires that collection efforts cease for thirty days after notice is provided to the consumer, and Garner cites no law in support of this proposition. *See* 15 U.S.C. §1692g(a). As such, Garner's arguments are without merit, and there remains no genuine issue of material fact as to this aspect of Garner's FDCPA claim.

### b. *Orlans Properly Responded to Garner's Debt Dispute*

Garner also alleges that Orlans violated 15 U.S.C. §1692g(b) when it failed to properly validate her debt under the FDCPA. Specifically, Garner asserts: "I have sent Orlans Associates, P.C. debt validation request and qualified written request received by Orlans

Associates, P.C. on January 2, 2015 and they have continued the Foreclosure by advertisement even though there were no attempts to validate any claims on my property or even obtain answers to my qualified written Request." (Doc. #1 at ¶8). Later in her complaint, Garner again alleges, "[Orlans] falsely represented the status of the debt. This is true because [Orlans] never replied to my validation of debt or qualified written request." (*Id.* at 6).

15 U.S.C. §1692g(b) provides, in relevant part:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

As set forth above, Garner's written dispute at least arguably constituted both a debt dispute under the FDCPA and a Qualified Written Request ("QWR") under RESPA. (Doc. #55-17). Under the law however, Orlans was not required to provide information under RESPA because it was not Garner's loan servicer. *See, e.g., Morton v. Bank of America*, 2013 WL 6491089, at *5 (W.D. Mich. Dec. 10, 2013) ("The Sixth Circuit has made it clear that liability for RESPA for failure to respond to QWRs attaches only to loan servicers.") (citing *Joyner v. MERS*, 451 F. Appx 505, 507 (6th Cir. 2011)). Thus, where Orlans was only required to validate the debt under the FDCPA, the sole issue is whether Orlans properly responded to Garner's debt dispute.

12

Here, the undisputed evidence establishes that Orlans received Garner's debt dispute on January 6, 2015, <u>after</u> the foreclosure notice had been posted on the premises, and <u>after</u> publication had commenced. (Doc. #55-15 at ¶¶6-9 [sic-8-11]). The undisputed evidence further establishes that the same day Orlans received Garner's debt dispute, it put the sheriff's sale on hold.[3] (*Id.* at ¶¶13-14 [sic-15-16]). Also on January 6, 2015, Orlans sent a letter to Garner, properly informing her that the QWR had to be directed to the loan servicer and indicating that it (Orlans) would respond to the debt dispute. (Doc. #55-18). Twenty-two days later, before Orlans had an opportunity to validate the debt, Garner filed her Complaint in this action. (Doc. #1). Nevertheless, on March 4, 2015, Orlans provided the information that validated the debt, including the loan origination date, original loan amount, original lender, current mortgagee, and current servicer. (Doc. #55-19). As Orlans persuasively argues, the information provided in this letter was sufficient to satisfy its obligations under the law. *See, e.g., Fassett v. Shermeta, Adams & Von Allmen, P.C.*, 2013 WL 2558279, at *6 (W.D. Mich. June 11, 2013) ("Contrary to plaintiff's contention, §1692g(b) does not require defendants to produce exhaustive documentation in support of the creditor's claim.").

In response to the evidence provided and case law cited by Orlans, Garner appears to make two arguments. First, she asserts that Orlans "did not answer any of [her] requests within the time frame allowed by the FDCPA …." (Doc. #57 at 3). Specifically, Garner takes issue with the fact that Orlans did not validate the debt until March 4, 2015, "more than 60 days after

---

[3] Garner makes the unsupported assertion that this is not the case, claiming that "if they [had put the sheriff's sale on hold] they would have sent a letter notifying me that they did and they did not." (Doc. #64 at 8). Garner cites no law for the proposition that Orlans was required to send her such a letter, however. And, indeed, the law provides just the opposite: under M.C.L. §600.3220, when a sheriff's sale is adjourned one week at a time, as it was here, the notice of adjournment need only be posted at the place of sale (i.e., the courthouse). There is no requirement that a letter be sent to the mortgagor to inform him or her of the adjournment. Thus, this argument is unavailing.

[she] requested debt validation." (*Id.* at 4). However, the FDCPA does not spell out the time frame within which a debt must be validated; it merely provides that validation must occur before proceeding with collection of a debt. *See* 15 U.S.C. §1692g(b). Here, that is exactly what happened: Orlans validated the debt before it moved forward with foreclosure proceedings (indeed, it repeatedly adjourned – and eventually cancelled – the foreclosure sale).

Garner also suggests that Orlans was required to "withdraw" the foreclosure notice upon receipt of the debt dispute. (Doc. #64 at 8). Again, however, Garner provides no legal authority for this proposition. And, indeed, neither the FDCPA nor the Michigan foreclosure laws require withdrawal of a foreclosure notice – that had already been posted and published – when a debt dispute is received. *See* 15 U.S.C. §1692g(a); M.C.L. §§600.3204, 600.3208, 600.3212. Here, where Orlans received Garner's debt dispute after the foreclosure notice had been posted and publication had commenced, and where Orlans subsequently adjourned (and eventually cancelled) the foreclosure sale after receiving the debt dispute, Garner simply cannot succeed on her claim that the FDCPA was violated.

For all of these reasons, Orlans is entitled to summary judgment on Garner's FDCPA claim.

### 2. *Garner's Motion for Summary Judgment Should be Denied*

Lastly, for all of the reasons stated above, summary judgment in Garner's favor should be denied. As set forth above, because Garner is the plaintiff in this case, to prevail on her summary judgment motion she must make a showing "sufficient for the court to hold that no reasonable trier of fact could find other than for [her]." *Calderone*, 799 F.2d at 259. Here, where the evidence establishes that summary judgment in favor of Orlans is appropriate, it is equally clear that Garner's motion for summary judgment should be denied.

14

## III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Orlans' Motion for Summary Judgment [**55**] be **GRANTED** and that Garner's Motion for Summary Judgment [**57**] be **DENIED**.

Dated: September 6, 2016　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

  The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 6, 2016.

                s/Eddrey O. Butts
                EDDREY O. BUTTS
                Case Manager