UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARLENE GARNER,

|                | Plaintiff, | Civil Action No. 15-10377 |
|                |            | Honorable Mark A. Goldsmith |
| v.             |            | Magistrate Judge David R. Grand |

SELECT PORTFOLIO SERVICING, INC.,
WELLS FARGO CORPORATE TRUST
SERVICES, and ORLANS ASSOCIATES, P.C.,

Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [114] AND TO
DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [122]**

Before the Court are cross-motions for summary judgment filed by Plaintiff Darlene

Garner ("Garner") and the sole remaining defendant in this case, Select Portfolio Servicing, Inc.

("SPS"). (Docs. #114, #122). Orders of Reference were entered on January 29, 2015, and

December 7, 2017, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b).

(Docs. #5, #84). The Court dispenses with oral argument pursuant to E.D. Mich. L.R. 7.1(f).

**I.     RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that SPS' Motion for Summary

Judgment (**Doc. #114**) be **GRANTED** and Garner's Motion for Summary Judgment (**Doc. #122**)

be **DENIED**.

**II.    REPORT**

**A.     Factual Background**

On April 5, 2007, Garner received a loan from Pulte Mortgage, LLC ("Pulte") for $318,172

(the "Loan") to purchase a residence located at 4781 Catalina Drive, Lake Orion, Michigan 48359

(the "Property").  (Doc. #15-2).  In return, Garner granted a mortgage on the Property to Pulte (the "Mortgage").  (*Id.*).  The Mortgage states that Mortgage Electronic Registration Systems, Inc. ("MERS") was acting as Pulte's nominee, that Garner "understands and agrees that MERS holds only legal title to the interests granted by [her in the Mortgage,]" and that MERS has the right "to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property…"  (*Id.* at 4).  The Mortgage was recorded in Oakland County, Michigan, on April 12, 2007.  (*Id.* at 2).

In an Assignment of Mortgage dated April 15, 2010, and filed on April 22, 2010, MERS assigned its interest in the Mortgage to Wells Fargo Bank, N.A. ("Wells Fargo") "as trustee for certificateholders of Bear Stearns Asset Backed Securities I LLC, Asset Backed Certificates, Series 2007-AC5, P.O. Box 292190, Lewisville, CA 75029, its successors and assigns" (the "Assignment").  (Doc. #15-3).  Only a few weeks prior, on March 30, 2010, Garner had filed a voluntary petition for Chapter 13 bankruptcy.  (Doc. #15-4).  As part of that petition, Garner filed a Schedule D form, in which she listed EMC Mortgage ("EMC") as the holder of a "first mortgage" on the Property in the amount of $310,000, and a "second mortgage" on the Property in the amount of $38,000.  (Doc. #15-5).[1]  Orlans Associates, P.C. ("Orlans"), a law firm based in Troy, Michigan, filed an appearance in the bankruptcy action on behalf of EMC.  (Doc. #15-6).  Garner's Chapter 13 plan was confirmed by court order on July 30, 2010.  (Doc. #15-7).

The bankruptcy action continued, and on August 22, 2013, SPS filed a Motion for Relief from Automatic Stay.  (Doc. #28-4).  In that motion, SPS asserted that it was then the servicer for the Loan on behalf of Wells Fargo, and that Garner had not met her obligations under the Chapter 13 plan.  (*Id.*).  Garner, through her counsel, filed a response to SPS' motion, but did not challenge

---

[1] EMC appears to have been the servicing agent for Garner's Loan at the time.  (Doc. #15-6).

SPS' assertion that it was the servicer of the Loan.  (Doc. #28-5).  Rather, she merely challenged

Wells Fargo's standing to foreclose on the Mortgage.  (*Id.*).  On September 26, 2013, the

bankruptcy court granted SPS' motion, holding:

> [SPS] and [Wells Fargo] and its successors and assigns are free to pursue
> its state court remedies with respect to its interest in the subject property.

(Doc. #28-6 at 2).  Thereafter, in a letter dated November 7, 2013, and entitled "Notice of Default

– Right to Cure," SPS wrote to Garner, advising her:

> The mortgage loan on your property is in default as a result of your failure
> to make payments as required by the Note and Deed of Trust or Mortgage
> (Security Instrument).   We have previously sent you letters and
> communications regarding this default in an attempt to resolve this matter.
> This letter provides information about the default and what rights you have
> to cure the default.  [SPS] services your mortgage loan and has been
> instructed on behalf of the holder of the promissory note to pursue remedies
> under the Security Instrument unless you take action to cure the default
> before the Cure Date shown below.  The Noteholder of your Loan is Wells
> Fargo Bank, N.A.….

(Doc. #15-8 at 2).

In late 2014, Orlans served as counsel to SPS in connection with foreclosure proceedings

against the Property.  (Doc. #1 at ¶¶ 5, 7; Doc. #28-3).  On December 29, 2014, Garner sent Orlans

a letter entitled "R.E.S.P.A. Qualified Written Request and Debt Validation Request."  (Doc. #18-

2).  Garner asked Orlans to "treat this letter as a 'qualified written request' under the Federal

Servicer Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e)."

(*Id.* at 2).  In that letter, Garner also wrote, in pertinent part:

> Specifically, we are disputing
>
> a) The identity of a true secured lender/creditor/servicer, <u>and</u>
>
> b) The existence of debt, <u>and</u>
>
> c) Your authority and capacity to collect on behalf of the alleged
> lender/creditor/servicer/note holder.  **Because of extensive criminal
> activity and fraud in this arena, I require proof of the chain of secured**

3

**ownership from the original alleged lender/creditor/note holder to the alleged current lender/creditor/note holder.**

Further, I require proof that you are the entity that has been contracted to work on behalf of the alleged lender/creditor/servicer/note holder and state specifically what capacity and authority does your client claim to have over the alleged account as it is critical to the Advertisements by foreclosure laws of Michigan….

\*       \*       \*

*IF FORECLOSURE OR FORECLOSURE BY ADVERTISEMENT PROCEEDS WITHOUT VALIDATING THIS ALEDGE [SIC] DEBT, THE RESPONSIBLE AND INITIATING PARTIES WILL BE LIABLE FOR A MINIMUM OF $1,000,000*…

(*Id.* at 2, 5 (emphasis in original)).  In addition, Garner asked Orlans to provide certain information regarding her Mortgage, such as the "name, address and telephone number of the actual entity that funded the transaction" and the "name, address and telephone number of the **Custodian of my original Promissory Note**…."  (*Id.* at 3 (emphasis in original)).

On January 28, 2015, just a few days before a foreclosure sale was scheduled to occur, Garner filed the instant lawsuit against, *inter alia*, Wells Fargo and SPS, alleging that they committed fraud in connection with the servicing and foreclosure of the Mortgage, and that they had violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*[2]  (Doc. #1).  In her complaint, and indeed throughout this action, Garner relied on one central argument to support her claims – namely, that she has never had a loan or mortgage with Wells Fargo and/or SPS.  (*Id.*).  She seeks $1,000,000 in damages for "DEFENDANTS [sic] fraud, misrepresentations, omissions, and violations of the [FDCPA]" and an order halting the sheriff's sale pending the outcome of this action.  (*Id.* at 8).  Nowhere in her pleadings or other filings in this action does Garner allege that she received mortgage statements from different entities, each asserting a

---

[2] Also named as a defendant in this action was Orlans, SPS' foreclosure counsel.  (Doc. #1).  All of Garner's claims against Orlans have been dismissed.  (Docs. #32, #40).

competing right to receive payment from her, or that multiple alleged mortgagees were asserting foreclosure rights in her Mortgage.

### B.      Procedural History

On July 28, 2015, this Court issued a Report and Recommendation ("R&R"), which, in relevant part, recommended dismissing Garner's fraud and FDCPA claims against SPS and Wells Fargo.  (Doc. #32).  In the R&R, the Court held that Garner's fraud claims failed because (a) they were barred by collateral estoppel, having been adjudicated in the prior bankruptcy action; and (b) Wells Fargo was the record assignee of the Mortgage.  (*Id.* at 8-13).  The Court also recommended dismissing Garner's FDCPA claims, holding that neither SPS nor Wells Fargo was a "debt collector" within the meaning of that statute.  (*Id.* at 13-14).  The District Court affirmed the R&R over Garner's objections, holding, in relevant part, that her fraud claim against SPS was properly dismissed because "SPS, as servicer of the mortgage, was entitled to foreclose on the property, and Plaintiff's claim on that basis fails as a matter of law."  (Doc. #40 at 6).  The District Court further held that Garner's FDCPA claims against SPS and Wells Fargo were properly dismissed because neither was a debt collector as defined by the FDCPA.  (*Id.* at 8).

Garner then appealed to the Sixth Circuit, arguing only that this Court erred in finding that Wells Fargo and SPS were not debt collectors subject to the FDCPA.[3]  (Doc. #82 at 5).  The Sixth Circuit affirmed dismissal of Garner's FDCPA claim against Wells Fargo, holding that Wells Fargo was "not a 'debt collector,' regardless of whether Garner's loan was in default at the time of the assignment, because it was attempting to collect its own debt."  (*Id.* at 7).  However, the

---

[3] Garner therefore waived review of this Court's dismissal of her fraud claims against Wells Fargo and SPS. *See, e.g., Hill v. City of Jackson, Michigan*, No. 17-1386, 2018 WL 5255116, at *7 (6th Cir. Oct. 22, 2018) (where party failed to raise argument in appeal brief, argument is waived and "the district court's reasoning on that point is conceded").

Sixth Circuit vacated this Court's holding as to Garner's FDCPA claim against SPS, holding that SPS had not shown that it was not a debt collector pursuant to the FDCPA because it had not shown that Garner's account was not in default when it acquired servicing rights.  (*Id.* at 7-8).

SPS now moves for summary judgment on Garner's sole remaining claim,[4] arguing that there is no evidence that it violated the FDCPA.  (Doc. #114).  Garner has filed a cross-motion for summary judgment on her FDCPA claim, asserting that "SPS wilfully [sic] commence[d] in foreclosure activity in disregards to 15 U.S.C. §1692g the Fair Debt Collection Practice[s] Act." (Doc. #122 at 9).

### C.    Legal Standards

Federal Rule of Civil Procedure 56 provides:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[4] SPS also argues that dismissal of Garner's FDCPA claim is appropriate pursuant to Fed. R. Civ. P. 12(c) because she has not established that she suffered an "injury in fact" that is both "concrete and particularized," as is required to confer Article III standing pursuant to the United States Supreme Court's decision in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016).  (Doc. #114 at 17-23). According to SPS, Garner's complaint fails to allege any injury at all – let alone an injury that rises to the level of "concrete" – stemming from SPS' alleged FDCPA violations.  (*Id.*).  In her response to SPS' motion, however, Garner points out that some courts have held – post-*Spokeo* – that "an alleged procedural violation [of a statute] can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest."  *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) (quoting *Spokeo*, 136 S. Ct. at 1549).  Here, Garner asserts that she has Article III standing because "SPS's willful violation of the FDCPA and misrepresentation's [sic] has the intention to harm my interest in my property in which the FDCPA was enacted by congress to protect."  (Doc. #119 at 3).  Ultimately, the Court need not decide the issue here because, for the reasons discussed below, it finds that summary judgment is warranted in SPS' favor.  Accordingly, for purposes of resolving the instant motions, the Court will assume Garner has alleged a sufficiently concrete injury so as to confer Article III standing.

248 (1986).  In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)).  Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'"  *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).  "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."  *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

A moving party with the burden of proof (typically the plaintiff) faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  As set forth above, the moving

party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citations omitted). Accordingly, summary judgment in favor of the plaintiff "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Harris v. Kowalski*, No. 05-cv-722, 2006 WL 1313863, at *3 (W.D. Mich. May 12, 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

**D.    Analysis**

*1.    SPS' Motion for Summary Judgment Should Be Granted*

In her complaint, with respect to SPS' alleged FDCPA violations, Garner says only:

> [SPS] has per se violated sections 1692e, 1692f, and 1692g [of the FDCPA] because it cannot possibly [have] validated the debt. Defendants made false, deceptive, and misleading representation about their standing to sue and the interest in the debt.[5] They also falsely represented the status of the debt. This is true because the Defendants never replied to my validation of debt or qualified written request.

(Doc. #1 at 6 (footnote added)). SPS now argues that summary judgment in its favor is warranted on Garner's FDCPA claim because there is no evidence that it violated the FDCPA.[6] (Doc. #114 at 24-31). For the reasons set forth below, the Court agrees that summary judgment is warranted on this basis because Garner has not raised a material question of fact that SPS violated any of these subsections of the statute.

---

[5] As set forth above, however, this Court has already held that "Plaintiff's premise" that SPS was fraudulently servicing the Loan "is not plausible." (Doc. #40 at 7).

[6] SPS also argues that Garner's FDCPA claim is barred by the statute of limitations, and that Garner has failed to establish that she was harmed as a result of any FDCPA violation. (Doc. #114 at 23-24, 31-33). Because the Court is recommending dismissal of Garner's FDCPA claim on other grounds, it need not address in detail the merits of these arguments.

<i>a.     Section 1692d</i>

As set forth above, while Garner asserts in her complaint that SPS "per se violated sections 1692e, 1692f, and 1692g" of the FDCPA, she does not specifically allege a violation of § 1692d, merely mentioning it in passing.  (Doc. #1 at 5, 6).  Section 1692d prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  § 1692d further identifies several specific ways in which it can be violated:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.  (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.  (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.  (4) The advertisement for sale of any debt to coerce payment of the debt.  (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.  (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

*Id.*

In her complaint, Garner does not make any allegations whatsoever concerning allegedly harassing, oppressive, or abusive actions on the part of SPS.  (Doc. #1).  And, when specifically questioned at her deposition about any conduct on the part of SPS that might fall within § 1692d's gambit, Garner was likewise unable to identify or articulate any specific instance of harassment by SPS.  (Doc. #120-1 at 9-10, pp. 28-30).  Indeed, Garner admitted at her deposition that SPS never threatened her with physical violence; she never spoke with anyone from SPS on the phone; and no one from SPS ever used foul language with her.  (*Id.*).  Thus, it certainly appears that Garner's own admissions defeat any claim she might purport to bring under § 1692d.

In response to SPS' dispositive motion, Garner appears to assert, for the first time, that

9

SPS' actions – in engaging in "foreclosure by advertisement without validating the debt" – constitute "the sale of a debt to coerce payment of a debt" within the meaning of § 1692d(4). (Doc. #122 at 2). There are multiple problems with this argument.

First, as set forth above, although Garner pleads violations of "sections 1692e, 1692f, and 1692g" in her complaint (Doc. #1 at 6), she does not also plead a violation of § 1692d, and it is improper for her to raise such a claim for the first time in a response brief to SPS' summary judgment motion.[7] *See Desparois v. Perrysburg Exempted Village Sch.*, 455 F. App'x 659, 666 (6th Cir. 2012) ("a plaintiff may not expand his claims to assert new theories for the first time in response to a summary judgment motion"). Additionally, while a foreclosure sale's proceeds may ultimately reduce the amount of a debt that is secured by a mortgage, that does not mean the foreclosure constitutes "the sale of a debt" within the meaning of § 1692d. Rather, in a foreclosure, it is the real property that is sold, not the debt. *See Thebert v. Potestivo & Assocs., P.C.*, No. 16-14341, 2017 WL 3581322, at *12 (E.D. Mich. Aug. 18, 2017) ("the Foreclosure Notice, which advertised the sale of the property and not the sale of the mortgage or loan, was not, in § 1692d's words, an 'advertisement for sale of any debt.'"). Thus, the evidence of record establishes that SPS did not violate § 1692d, and any claim under this section fails as a matter of law.

### b.   *Section 1692e*

Section 1692e prohibits a "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA further provides a list of specific actions that would violate this statutory provision:

> (1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof. (2) The false

---

[7] Additionally, the filing in which Garner first made this assertion was submitted on December 20, 2018 (Doc. #122), well after the deadline established by the Court (Doc. #116).

representation of -- (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney. (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action. (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. (6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to -- (A) lose any claim or defense to payment of the debt; or (B) become subject to any practice prohibited by this subchapter. (7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer. (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. (9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval. (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action. (12) The false representation or implication that accounts have been turned over to innocent purchasers for value. (13) The false representation or implication that documents are legal process. (14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization. (15) The false representation or implication that documents are not legal process forms or do not require action by the consumer. (16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

*Id.*

In pursuing a claim under this subsection, too, Garner has failed to identify any false, deceptive, or misleading representations made by SPS. When asked, during the course of

11

discovery, to produce "all documents that support, refer, reflect, or relate" to her claim that SPS violated § 1692e, Garner failed to produce any.  (Doc. #114-8 at 9).  Similarly, when asked via interrogatory to detail each instance in which SPS allegedly violated § 1692e, Garner did nothing more than recite the language of the applicable statutory provision and restate her allegation that the Loan and Mortgage were fraudulent (claims that were dismissed more than three years ago).  (*Id.* at 4).

Moreover, when asked at her deposition to articulate the alleged wrongdoing on the part of SPS that violated § 1692e, Garner was repeatedly unable to do so.  (*See, e.g.,* Doc. #120-1 at 10, pp. 30-31 (SPS never filed a lawsuit against her or threatened to arrest her)).  Rather, she merely continued to rely on her (previously rejected) argument that SPS is not the servicer of the Loan as a purported basis for a violation of this statute.  (*See, e.g.,* Doc. #120-1 at 7, pp. 20-21 ("In my opinion SPS has not established who they are collecting for.  SPS has not established the right or the authority that they think they have to service me.  SPS has never been a servicer of my loan or any other loan that I do not have.  SPS has not given me accurate documentation of a loan or loan number, my signature on a loan."); *Id.* at 5, p. 13 ("You're violating the Fair Debt [sic] Collection Practice Act because you are stating that you're collecting a debt that I owe but yet you have not proven to me that I owe SPS.  You have not proven to me that SPS has the right to service on me.  Who do SPS work for if not Wells Fargo?  Who are you working for?")).  Once again, then, Garner's own admissions confirm that there is no legal or evidentiary support for her claim that SPS violated this section of the FDCPA.

### c.    *Section 1692f*

Similarly, Section 1692f prohibits "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  The FDCPA provides that § 1692f may be violated in the

following ways:

> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. (2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit. (3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution. (4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument. (5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees. (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if -- (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement. (7) Communicating with a consumer regarding a debt by post card. (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

*Id.*

Here, Garner has not even alleged – let alone come forward with evidence – that SPS took any extreme action in an attempt to collect a debt. Nor has she alleged or provided evidence of any actions taken by SPS that might constitute unfair or unconscionable means to collect a debt, such as sending a post card to Garner or calling her family members. When asked, during the course of discovery, to produce "all documents that support, refer, reflect, or relate" to her claim that SPS violated § 1692f, Garner failed to produce any. (Doc. #114-8 at 10). Similarly, when asked via interrogatory to detail each instance in which SPS allegedly violated § 1692f, Garner did nothing more than recite the language of the applicable statutory provision and restate her allegation that the Loan and Mortgage were fraudulent (claims that were dismissed more than three

years ago). (*Id.* at 4-5). Moreover, when questioned at her deposition, Garner admitted that she never made a payment to SPS; SPS never sent her any information on a postcard; SPS never called any of her family members or her job in relation to the Loan; and SPS never threatened her or her family members with bodily harm. (Doc. #120-1 at 10, p. 31). Therefore, there is no genuine issue of material fact as to Garner's claim that SPS engaged in conduct violative of § 1692f, and summary judgment is warranted on any claim under this subsection.

### d.    Section 1692g

Section 1692g, which Garner also references in her complaint, provides that, within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall provide written notice containing:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). This section further provides:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b).

As an initial matter, although Garner mentions § 1692g in her complaint, it appears that

any claim under this section is not aimed at SPS, as she does not allege that she sent a debt validation request to SPS (nor that such a request was made within 30 days of receiving the initial communication from SPS).[8]  Indeed, Garner fails to provide any information regarding whether or when she received SPS' "initial communication" or the timing of her alleged debt validation request(s) in relation to that "initial communication."  When asked, during the course of discovery, to produce "all documents that support, refer, reflect, or relate" to her claim that SPS violated § 1692g, Garner failed to produce any.  (Doc. #114-8 at 10).  Similarly, when asked via interrogatory to detail each instance in which SPS allegedly violated § 1692g, Garner again did nothing more than recite the language of the applicable statutory provision and restate her allegation that the Loan and Mortgage were fraudulent (claims that were dismissed more than three years ago).  (*Id.* at 5).[9]  As such, there remains no genuine issue of material fact as to any claim under this section.  Therefore, for all of the foregoing reasons, SPS is entitled to summary judgment on Garner's FDCPA claim.

### 2.    *Garner's Motion for Summary Judgment Should be Denied*

Lastly, for all of the reasons stated above, summary judgment in Garner's favor should be denied.  Because Garner is the plaintiff in this case, to prevail on her summary judgment motion,[10]

---

[8] Rather, Garner alleges that she "sent Orlans Associates P.C. [a] debt validation request[.]"  (Doc. #1 at ¶ 8).  And, at another point in the complaint, she vaguely references a debt validation request that Wells Fargo allegedly did not answer.  (*Id.* at ¶ 12).

[9] Moreover, not only has Garner failed to provide any evidence in support of her assertion that SPS violated § 1692g, but the record demonstrates just the opposite.  Specifically, despite no clear articulation from Garner as to when she supposedly sent any communication directly to SPS, the evidence indicates that SPS nevertheless validated the Loan several times.  (Doc. #114-7).  At her deposition, Garner admitted having received this validation.  (Doc. #120-1 at 10, pp. 32-33).

[10] Garner's motion for summary judgment is actually captioned "Plaintiff Darlene Garner's (1) Answer to SPS's Supplement to Motion to Dismiss and/or for Summary Judgment (2) Motion to Compel Responsive Answers to Interrogatories and Request for Production of Documents Pursuant to FRCP 37 (3) Motion to Deem Admissions Admitted Pursuant to FRCP 36(a)(6), (4) Motion for Summary Judgement [sic] Pursuant Rule 56(e)."  (Doc. #122).  As an initial matter,

she must make a showing "sufficient for the court to hold that no reasonable trier of fact could find

other than for [her]." *Calderone*, 799 F.2d at 259.  In her motion, Garner alleges only that "SPS

wilfully [sic] commence[d] in foreclosure activity in disregards to 15 U.S.C. §1692g the Fair Debt

Collection Practices Act." (Doc. #122 at 9).  But, Garner does not provide any evidentiary support

for this claim whatsoever; rather, her motion consists only of citations to case law identifying what

"debt collection" means, with no clarifying analysis or application to the facts of this case.  For all

of the reasons set forth above, where the evidence establishes that summary judgment in favor of

SPS is appropriate on Garner's claim pursuant to § 1692g, it is equally clear that her motion for

summary judgment – which relates only to this statutory section – should be denied.

## III.    CONCLUSION

    For the foregoing reasons, **IT IS RECOMMENDED** that SPS' Motion for Summary

Judgment (**Doc. #114**) be **GRANTED** and Garner's Motion for Summary Judgment (**Doc. #122**)

be **DENIED**.


Dated: February 13, 2019                         s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge

---

this filing is improper, as it impermissibly combines a response to SPS' dispositive motion with two discovery-related counter-motions.  *See* E.D. Mich. ECF Policies and Procedures R. 5(f) ("a response or reply to a motion must not be combined with a counter-motion).  Moreover, Garner's motion to compel was filed on December 20, 2018, well after the November 16, 2018 discovery cutoff, which renders it untimely.  *See Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 401 (E.D. Mich. 2000) ("[a] district court may properly deny a motion to compel discovery where the motion to compel was filed after the close of discovery.").  And, even if the Court were to consider the merits of this motion, it is clear that SPS responded in full to the interrogatories, requests for production, and requests to admit at issue, and Garner has simply failed to identify any specific response that was actually evasive or insufficient. (Docs. #124, #124-2).  As such, to the extent Garner seeks an order compelling additional discovery responses and/or deeming requests for admission admitted, she is not entitled to that relief.

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections that raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 13, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
